Theresa Sauer (*pro hac vice)*
Malinda Morain (*pro hac vice)*
BEATTY & WOZNIAK, P.C.
1801 California St., Suite 3650
Denver, Colorado 80202
Telephone: (303) 407-4499
Facsimile: (800) 886-6566
tsauer@bwenergylaw.com
mmorain@bwenergylaw.com

*Attorneys for Defendant-Intervenors North Slope
Exploration, LLC and North Slope Energy, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GRANDMOTHERS GROWING GOODNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DOUG BURGUM, in his official capacity as Secretary of the Interior, et al., <br><br> Defendants, <br><br> and <br><br> NORTH SLOPE EXPLORATION, LLC AND NORTH SLOPE ENERGY, LLC, <br><br> Defendant-Intervenors. | Civil Action No. 3:26-cv-00097 |

### NORTH SLOPE EXPLORATION, LLC AND NORTH SLOPE ENERGY, LLC's MEMORANDUM IN OPPOSITION TO PLAINTIFFS' OPENING BRIEF FOR SUMMARY JUDGMENT
(Civil Rule 56(a), Local Civil Rule 16.3)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

   I.   Grandmother's Growing Failed to Establish Standing to Challenge the Leases ..... 8

      A.   Grandmothers Growing cannot prove standing to challenge the Conservation ROW Revocation ................................................................................. 8

      B.   Grandmothers Growing has not proven standing sufficient to cancel NSE's awarded leases ..................................................................................... 8

   II.  BLM's Issuance of The 2025 IAP ROD and Conduct in Offering Parcels for Lease Was Lawful ...................................................................................................... 13

      A.   BLM's IAP ROD and leasing decisions complied with the Production Act ...... 13

      B.   BLM reasonably interpreted congressional mandates in adopting the 2025 IAP ROD and conducting oil and gas leasing ............................................ 18

      C.   BLM's adoption of the IAP constituted a supported policy reversal ................ 19

  III. Revocation of The Conservation ROW Was Lawful ............................................. 20

  IV. If the Court Finds Error, Remand Without Vacatur is the Appropriate Remedy ... 20

      A.   The Court must consider remedy in the context of its jurisdiction only to "set aside" the specific final agency action for which Grandmothers' Growing has asserted a legal violation. ..................................................................... 20

      B.   If the Court identifies error, remand is the appropriate remedy because the disruptive consequences outweigh the seriousness of the alleged errors. .......... 23

   V.  The Court Should Set Limits to Avoid Open-Ended Remand and a *De Facto* Permanent Injunction ............................................................................................. 27

CONCLUSION .................................................................................................................. 29

Certificate of Compliance ................................................................................................. 31

Certificate of Service ........................................................................................................ 32

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page i

Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 2 of 36

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. Lubchenco*, No. 3:10-cv-00271-TMB, 2012 U.S. Dist. LEXIS 202329 (D. Alaska Mar. 5, 2012)........................................................................................28

*Allied-Signal v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ......................................................................................................20, 23, 24

*Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) ................................................24

*ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, 660 F.Supp.3d 822 (D. Alaska 2023) .......................................................................................... 1

*Ctr. for Biological Diversity v. BLM*, 833 F.3d 1136 (9th Cir. 2016)..............................7

*Ctr. for Biological Diversity v. United States BLM*, 141 F.4th 976 (9th Cir. 2025) ..passim

*Ctr. for Biological Diversity v. United States BLM*, No. C 06-4884 SI, 2011 LX 33733 (N.D. Cal. Jan. 28, 2011) ...................................................................................28

*Ctr. for Food Safety v. Regan*, 56 F.4th 648 (9th Cir. 2022)....................................26, 27

*Dickinson v. Zurko*, 527 U.S. 150 (1999)..................................................................7

*Kunaknana v. United States Army Corps of Eng'rs*, 23 F. Supp. 3d 1063 (D. Alaska 2014) ...................................................................................................... 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...........................................8, 9, 11

*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360 (1989) .........................................7

*Mobil Oil Expl. & Producing Se. v. United States*, 530 U.S. 604 (2000) .........................25

*Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139 (2010) ...................................22, 23

*N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969 (9th Cir. 2006) .................................5

*Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845 (9th Cir. 2017).......................................7

*Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7 (D.D.C. 2014) ....................24

*Nuiqsut Trilateral Inc. v. Burgum, et al.*, 3:26-cv-98....................................................6, 19

*Safe Air for Everyone v. EPA*, 488 F.3d 1088 (9th Cir. 2007) .........................................19

*Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 985 F.3d 1032 (D.C. Cir. 2021) .......................................................................................................22

*Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002) .............27

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)............................................................11

*U.S. Postal Serv. v. Gregory*, 534 U.S. 1 (2001)..............................................................7

*Union Oil Co. v. Morton*, 512 F.2d 743 (9th Cir. 1975) ..................................................25

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page ii
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 3 of 36

*W. Watersheds Project v. Bernhardt*, 543 F. Supp. 3d 958 (D. Idaho 2021)........25, 28, 29

*Wash. Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013)..............................8, 12, 21

*Wilderness Soc'y v. DOI*, No. 22-cv-1871 (CRC), 2024 U.S. Dist. LEXIS 124730 (D.D.C. July 16, 2024)......................................................................................28, 29

*Wildwest Inst. v. Kurth*, 855 F.3d 995 (9th Cir. 2017) ..................................................7

*Yazzie v. U.S. EPA*, 851 F.3d 960 (9th Cir. 2017).........................................................7

**Statutes**

42 U.S.C. § 6504 ...................................................................................................passim

42 U.S.C. § 6506 ...................................................................................................passim

5 U.S.C. § 702 ...............................................................................................................23

5 U.S.C. § 704 .........................................................................................................20, 21

5 U.S.C. § 706 ...............................................................................................7, 21, 22, 23

5 U.S.C. §§ 801-808 .......................................................................................................5

**Other Authorities**

42 Fed. Reg. 28,720 (May 27, 1977)..............................................................................4

42 Fed. Reg. 28,723 (June 3, 1977)................................................................................4

91 Fed. Reg. 6248 (Feb. 11, 2026) .................................................................................6

Exec. Order No. 3797-A..................................................................................................2

Pub. L. No. 94-258 (April 5, 1976) ................................................................................2

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page iii
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 4 of 36

# INTRODUCTION

Congress enacted the Naval Petroleum Reserves Production Act (Production Act) in 1976 and then amended it in 1980 in response to a national energy crisis caused by significant petroleum supply shortages. The Production Act was designed to spur petroleum production in an approximately 23-million-acre area of Alaska that President Harding established in 1923, and that Congress subsequently designated as a national petroleum reserve—officially the National Petroleum Reserve in Alaska (the Petroleum Reserve, or NPR-A). As this Court recognized, Congress specifically intended to "open the NPR-A to private exploration and establish 'an expeditious program of competitive leasing of oil and gas in the' NPR-A." *ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, 660 F.Supp.3d 822, 826 (D. Alaska 2023) (Gleason, J.) (quoting 42 U.S.C. § 6506(a)).

Consistent with that mandate, the Bureau of Land Management (BLM) has held oil and gas lease sales in the Petroleum Reserve for decades, resulting in substantial private-sector leasing and development.

The March 2026 lease sale continues this longstanding practice and is consistent with both Congress's intent and the requirements of the Production Act. Likewise, the 2025 Integrated Activity Plan (IAP) and its supporting Record of Decision (ROD) were adopted and implemented lawfully and consistent with the Production Act.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 1
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 5 of 36

Therefore, the Court should deny Plaintiffs Grandmothers Growing Goodness, et al.'s (Grandmothers Growing) motion for summary judgment in its entirety and grant this cross-motion for summary judgment on all of their claims.

## BACKGROUND

Congress created—and has continually confirmed—the legislative intent that the Petroleum Reserve be just that: a region dedicated to an expeditious oil and gas exploration and production program. Since the BLM assumed jurisdiction over the reserve pursuant to the Production Act, apart from certain actions taken in the previous administration, it has acted consistently with its statutory duties to expeditiously conduct oil and gas leasing. BLM's recent actions, challenged here by Grandmothers Growing, are wholly consistent with over a hundred years of congressional intent and historic practice.

<u>History of the Petroleum Reserve</u>

President Harding established the Petroleum Reserve on Alaska's North Slope in 1923 "for oil and gas only." Exec. Order No. 3797-A. In 1976, Congress passed the Production Act to establish "national petroleum reserves the development of which needs to be regulated in a manner consistent with the total energy needs of the Nation, and for other purposes." Pub. L. No. 94-258 (April 5, 1976).

The Production Act transferred jurisdiction from the U.S. Navy to the Department of the Interior and directed the Secretary to "commence further petroleum exploration of the reserve. . . ." 42 U.S.C. § 6504(c). In the Department of the Interior Appropriations Act, Fiscal Year 1981, Congress again directed the Secretary to develop the Petroleum

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 2
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 6 of 36

Reserves' oil and gas resources, directing the Secretary to "conduct an expeditious program of competitive leasing of oil and gas in the [Petroleum Reserve] in accordance with this Act." 42 U.S.C. § 6506a(a).

BLM sells Petroleum Reserve leases with the stated expectation that lessees can develop the leased lands for oil and gas production. Petroleum Reserve leases grant "the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described" in the lease, "together with the right to build and maintain necessary improvements thereupon for the term" of the lease. Detailed Statement of the Sale (Statement of Sale), Exhibit H, Sample Lease Form, BLM_130786-790 at BLM_130786.

With this main goal—production of oil and gas—in mind, the Production Act reflects that operators should conduct oil and gas exploration in a manner that acknowledges other important resources in the Petroleum Reserve. The Act instructs that "[a]ny exploration within the Utukok River, the Teshekpuk Lake areas, and other areas designated by the Secretary of the Interior containing any significant subsistence, recreational, fish and wildlife, or historical or scenic value, shall be conducted in a manner that will assure the maximum protection of such surface values to the extent consistent with the requirements of this Act for the exploration of the reserve." 42 U.S.C. § 6504(a).

Congress also instructed BLM to "provide for such conditions, restrictions, and prohibitions" on activities that are "necessary or appropriate to mitigate reasonably foreseeable and significantly adverse effects on the surface resources of the [Petroleum Reserve]." *Id*. § 6506a(b).

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 3
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 7 of 36

BLM designated the Utukok River Uplands, Teshekpuk Lake, and the Colville River as Special Areas in 1977. In doing so, BLM explained that "[m]aximum protection of designated special areas *does not imply a prohibition of exploration or other activities*," and instead contemplated that "steps to *minimize* adverse impacts on existing resource values will be required and implemented." 42 Fed. Reg. 28,723 (June 3, 1977) (emphasis added).

Similarly, BLM's 1977 regulations describe "maximum protection" not as a prohibition, but as including but "not limited to requirements for: (1) rescheduling activities and use of alternative routes, (2) types of vehicles and loadings, (3) limiting types of aircraft in combination with minimum flight altitudes and distances from identified places and (4) special fuel handling procedures." 42 Fed. Reg. 28,720 at 28,722 (May 27, 1977).

<u>The Petroleum Reserve Leasing and Planning</u>

Under BLM's authority to conduct an expeditious leasing program, BLM held lease sales in the Petroleum Reserve from 1982 through 1984, and in 1999, 2002, 2004, 2006, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019. *See* Mark DeSantis, Cong. Research Serv., IF13119, National Petroleum Reserve in Alaska (NPR-A): A Summary (2025), available at https://www.congress.gov/crs-product/IF13119.

Starting in 1998, BLM carried out its mandates by preparing IAPs, supported by Environmental Impact Statements (EISs), to govern the Petroleum Reserve leasing program, evaluate which areas to open for leasing, and under what conditions. IAPs also evaluated the size and scope of Special Areas. BLM finalized its first regional IAP in 1998 to address the management of the northeast Petroleum Reserve. *See N. Alaska Envtl. Ctr.*

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 4
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 8 of 36

*v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006). It completed a separate IAP for the northwest Petroleum Reserve in 2004. BLM_027309. BLM completed a comprehensive IAP in 2013, supported by an EIS prepared in 2012. BLM_027284.

In 2018, BLM initiated scoping to again update the Petroleum Reserve IAP. BLM_000029. During this process BLM held public meetings, received and reviewed tens of thousands of comments, and issued a revised IAP ROD in December 2020. BLM_000030.

BLM pivoted from its 2020 decision in 2022 and issued a revised IAP ROD based on Executive Order 13990 *Protecting Public Health and the Environment and Restorring Science to Tackle the Climate Crisis*. The 2022 IAP ROD followed a brief supplemental environmental analysis and chose the no-action alternative from the EIS prepared in 2020, reverting in large part to the 2013 IAP ROD management provisions. BLM_002351.

On December 5, 2025, the President signed Congress's joint resolution to disapprove the 2022 IAP under the Congressional Review Act, 5 U.S.C. §§ 801-808. The joint resolution provided that the 2022 IAP "shall be treated as though [it] had never taken effect." 5 U.S.C. § 801(f).

On December 22, 2025, BLM adopted the 2025 IAP via a ROD. BLM_024529-621. The 2025 IAP ROD complied with Section 50105(b) of the Reconciliation Act instruction to review and restore the Petroleum Reserve oil and gas leasing program consistent with the 2020 IAP. BLM_024537-38. Like the 2022 IAP ROD, the 2025 IAP ROD was based on BLM's 2020 EIS analysis as supplemented by a 2025 environmental assessment (EA)

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 5
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 9 of 36

prepared by BLM to consider new circumstances and information since the 2020 IAP. BLM_024538.

BLM published a 2026 Notice of oil and gas lease sale (Sale Notice) consistent with the Production Act in the Federal Register. 91 Fed. Reg. 6248 (Feb. 11, 2026). Multiple bidders, including North Slope Exploration, LLC, submitted bids pursuant to the Sale Notice and Statement of Sale, and BLM opened those bids on March 18, 2026, consistent with the Statement of Sale. BLM reported on the bid results. BLM_130792-97. BLM subsequently issued letters accepting high bids on certain leases and issued those leases in June of 2026. *See, e.g.,* BLM_130801-803. BLM has not issued leases on tracts fully or partially within the disputed Teshekpuk Lake Conservation Right of Way (Conservation ROW) based on this Court's order in *Nuiqsut Trilateral Inc. v. Burgum, et al.*, 3:26-cv-98. *See* Order on Motion for Preliminary Injunction, Case No. 3:26-cv-98-SLG, Doc. 42; BLM_130816.

Grandmothers Growing Lawsuit

Grandmothers Growing filed their lawsuit in February of 2026 in the District of Columbia. Complaint, Doc. 1. The district court for the District of Columbia subsequently transferred the case to this Court, and Defendant-Intervenors North Slope Exploration, LLC (North Slope Exploration) and North Slope Energy, LLC (collectively, NSE) promptly filed a motion to intervene that this Court granted. *See* Order on Unopposed Motion to Intervene, Doc. 51. Grandmothers Growing filed a preliminary injunction seeking to enjoin progress on the 2026 lease sale, which this Court denied. Order on Motion for Preliminary Injunction, Doc. 59. Grandmothers Growing seeks a declaration that

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 6
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 10 of 36

BLM's decision to cancel the Conservation ROW was unlawful, and to vacate the 2025 IAP and ROD, Sale Notice and the Acceptance of Bids for certain leases. Doc 84, p. 30 of 32. NSE opposes this relief, and requests summary judgment in favor of Defendants on all claims.

## STANDARD OF REVIEW

The Administrative Procedure Act (APA) governs Grandmothers Growing's case for judicial review of agency decisions. *See Dickinson v. Zurko*, 527 U.S. 150, 152 (1999). The APA only allows for review of final agency action. 5 U.S.C. § 704. Under the APA, a final agency action may be "set aside" only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 868 (9th Cir. 2017). The standard is "highly deferential", and a court must presume the agency action is valid if a reasonable basis exists for the decision. *Yazzie v. U.S. EPA*, 851 F.3d 960, 968 (9th Cir. 2017).

A reviewing court may not substitute its judgment for that of the agency. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989). The agency must only articulate a rational connection between the facts found and the conclusions made. *See Wildwest Inst. v. Kurth*, 855 F.3d 995, 1002 (9th Cir. 2017); *Ctr. for Biological Diversity v. BLM*, 833 F.3d 1136, 1150 (9th Cir. 2016).

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 7
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 11 of 36

## ARGUMENT

### I. GRANDMOTHER'S GROWING FAILED TO ESTABLISH STANDING TO CHALLENGE THE LEASES

#### A. Grandmothers Growing cannot prove standing to challenge the Conservation ROW Revocation

In the interests of judicial efficiency, NSE adopts ConocoPhillips Alaska, Inc.'s argument that Grandmothers Growing cannot establish standing to challenge Defendants' cancellation of the Conservation ROW. Doc. 99, pp. 55-61.

#### B. Grandmothers Growing has not proven standing sufficient to cancel NSE's awarded leases

Grandmothers Growing bears the burden to show standing. A plaintiff must demonstrate standing for: (1) each claim a plaintiff "seeks to press" and (2) "for each form of relief sought." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). When purported plaintiffs' "interests are tied to a particular area of land, generalized averments about using that land in the future are 'simply not enough.'" *Ctr. for Biological Diversity v. United States BLM*, 141 F.4th 976, 1007 (9th Cir. 2025), *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). To show the required injury, "a plaintiff must describe 'concrete plans' for being in the area where the use or observation interest will be harmed." *Id*.

Because Grandmothers Growing is an organization, its standing for each claim turns on whether any of its members would have standing. *Id*. That member "must demonstrate (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 8
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 12 of 36

imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (quotations and citation omitted).

Turning first to a concrete injury, Grandmothers Growing failed to provide more than generalized averments that any member suffers an injury attributable to their use of land "in the area" of their chosen subset of challenged leases. Although the challenged leases include areas within the boundaries of the Conservation ROW and the Teshekpuk Lake Special Area (TLSA) as mapped in the 2022 IAP ROD, the bounds of the lease sale that Grandmothers Growing seek to vacate also include lands well to the south and west of Teshekpuk Lake. Given this wide geographic area of alleged injury, standing doctrine requires Grandmothers Growing to provide evidence beyond mere "generalized averments" regarding their members' interest in the NPR-A. *Ctr. for Biological Diversity*, 141 F.4th at 1007.

Further, as to their challenge regarding the Sale Notice and Acceptance of Bids, Grandmothers Growing must show a member who uses the challenged area where those decisions occurred. Grandmothers Growing failed to do so for areas outside the Conservation ROW.

Grandmothers Growing seeks to challenge a substantial subset of the lease tracts, generally described as "the tracts within the former Teshekpuk Lake Conservation Right of Way and tracks south and west of the Right of Way, within the Teshekpuk Lake Special Area as defined by the 2022 IAP ROD, that BLM has classified as having high oil and gas development potential." *See* Doc. 84, p. 6 of 32, n.1, citing ECF 14-38.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 9
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 13 of 36

North Slope Exploration was the highest bidder on seventy-eight leases from the March 2026 sale, most of which are subject to challenge in Grandmothers Growing's suit. While most of North Slope Exploration's recently acquired leases fall within the bounds of the TLSA, nearly all NSE's tracts fall outside the Conservation ROW boundaries and are well south and west of any of the areas identified in Grandmothers Growing member's affidavits. *See* BLM_130812-16 (Notice of Bid Acceptance and Appendix A showing 72 leases awarded outside of the Conservation ROW. Appendix B to the Bid Acceptance Notice explains that certain additional leases awarded to North Slope Exploration are partially in the Conservation ROW and not yet issued); BLM NPR-A 2026 Lease Sale Results Map, BLM_130798[1] (confirming North Slope Exploration was the high bidder on parcels H-430, H-427, H-424, H-421, H420 and H-417, which are partially inside the Conservation ROW).

Grandmothers Growing's affidavits fail to establish an interest in the entirety of the challenged area, or specifically, in the area of NSE's leases. For example, Ms. Ahtuangaruak, a resident of Nuiqsut, states that "I hunt, fish, and gather across the North Slope, including in the lands formerly protected by the Right of Way, in the broader TLSA, the lands between our village [Nuiqsut] and the TLSA, and the lands south of the Right of way toward the Colville River." Doc. 84-1, p. 5, ¶ 11; *see also* Doc. 84-2, p. 9 of 11 (noting intent to conduct paddling trips "south of the now-cancelled Teshekpuk Lake Conservation

---

[1] The administrative record contains documents stamped with duplicative Bates numbers. The map referenced here is located in the 2025 BLM NPRA IAP AR_Supplement within the folder "BLM_10" and is titled "NPRA 2026 Lease Sale Tract Results Map."

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 10
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 14 of 36

Right-of-Way . . ."); Doc. 84-3, p. 8, ¶¶ 22-23 (expressing certainty regarding intent to guide "at least one trip" in the "NPR-A").

General averments that a member of Grandmothers Growing intends to use areas within the Conservation ROW and in areas "south and west," and reference to specific areas well east of the challenged tracts, including Nuiqsut, are textbook examples of alleging injury "in the vicinity" of the challenged action and are insufficient to establish standing to challenge and seek "vacatur of" a vaguely-defined subset (226 leases) within the 5.5 million acres offered for lease. *Lujan*, 504 U.S. at 565-66 (noting that "plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it) (citation omitted); Doc. 84, p. 6 of 32, n.1 (noting challenge to the "leasing of tracts located within the former [Conservation ROW], and tracts south and west . . ."). Members general averments related to a "broader ecosystem within which a project takes place" such as the NPR-A or the TLSA as a whole or areas proximate, cannot confer standing. *Kunaknana v. United States Army Corps of Eng'rs*, 23 F. Supp. 3d 1063, 1084 (D. Alaska 2014).

In addition to failing to adequately tie any member's use to the challenged parcels with any specificity, Grandmothers Growing have failed to establish the necessary causation between the leasing of parcels and their purported injury. To establish standing, a plaintiff's injury must be fairly traceable to the challenged conduct. *Ctr. for Biological Diversity*, 141 F.4th at 1008. Thus, Grandmothers Growing must show a member's injury is traceable to each of the challenged tracts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (noting standing is not "dispensed in gross; rather, plaintiffs must demonstrate

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 11
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 15 of 36

standing for each claim that they press and for each form of relief that they seek. . . .";

*Wash. Envtl. Council*, 732 F.3d at 1139 (noting plaintiff must demonstrate standing "for each form of relief sought."). Grandmothers Growing seeks to cancel or prevent the issuance of 226 individual leases, without establishing standing for each.

Nor, as this Court has already acknowledged, are members' assertions regarding mere "aesthetic" concerns to undisturbed landscapes sufficient to establish standing. Multiple members' declarations assert injury solely based on aesthetic concerns, or injury to their ability to market aesthetic experiences based on their assertions that the Petroleum Reserve is currently in an undisturbed state, but leasing will cause this to change to the members' disappointment. *See*, *e.g.*, Doc. 84-1, p. 14, ¶ 26 (noting need to "go to undisturbed areas"); Doc. 84-2, p. 10, ¶ 23 (asserting injury to business because clients "seek wilderness, solitude, and unspoiled nature" and that "[e]ven the announcement of a lease sale . . . diminishes the area's allure").

The mere idea, or even the presence of evidence of petroleum production in a 23-million-acre petroleum reserve cannot credibly create a cognizable injury for the purposes of standing. The Court has already acknowledged this simple concept. *See* Doc. 59, p. 19 (noting that Plaintiffs in this case "do not have the same interest in recreational use and enjoyment that the plaintiffs did with respect to the national forest at issue in *Carlson* and *Alliance for the Wild Rockies*" because the Petroleum Reserve is just that: a petroleum reserve set aside with the express Congressional purpose of expedient exploration and production of petroleum). Therefore, allegations of aesthetic injuries due to threats to the Petroleum Reserves' undisturbed state cannot establish Grandmothers Growing's interest

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 12
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 16 of 36

in the area affected. *Id.* Thus, Grandmothers Growing has failed to establish standing to challenge each challenged action.

## II. BLM'S ISSUANCE OF THE 2025 IAP ROD AND CONDUCT IN OFFERING PARCELS FOR LEASE WAS LAWFUL

Defendants' issuance of the 2025 IAP ROD was consistent with the Production Act, as confirmed by relevant case law. Grandmothers Growing's repeated assertions that issuance of the 2025 IAP ROD failed to correctly apply its congressional mandate are unsupported by the record or governing law. Further, Plaintiffs' arguments that the challenged decisions all fall based on BLM's interpretation of the 2025 Budget Reconciliation Act in a sentence in the Conservation ROW Cancellation Notice is unsupported by the law and the administrative record. Finally, BLM's decisions to implement the 2025 IAP ROD and offer parcels for lease did not constitute an unlawful reversal of factual findings without a reasoned explanation, but rather, these decisions reflect the agency's rational determination that Congress mandated a policy change from the 2022 IAP ROD.

### A. BLM's IAP ROD and leasing decisions complied with the Production Act

Grandmothers Growing appears to assert that this Court should vacate the 2025 IAP ROD because BLM allegedly failed to evaluate what measures were necessary to meet the Production Act, specifically 42 U.S.C. §§ 6504(a) and 6506a(b). *See* Doc. 84, p. 13 of 32. Accepting Grandmothers Growing's argument on this point would require the Court to ignore the law and the record.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 13
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 17 of 36

First, Grandmothers Growing's narrow reading of the Production Act is inconsistent with a plain reading and binding case law. As the Ninth Circuit has confirmed, the Production Act requires that: (1) BLM must create an "expeditious program of competitive leasing of oil and gas" in the Petroleum Reserve, (2) any "exploration within certain special areas must be conducted in a manner which will assure the maximum protection of significant subsistence, recreational, fish and wildlife, or historical or scenic value[s] to the extent consistent with the requirements of the" Production Act; and (3) the "Secretary of the Interior must provide for such conditions, restrictions, and prohibitions as [the Secretary] deems necessary or appropriate to mitigate reasonably foreseeable and significantly adverse effects on the surface resources" in the Petroleum Reserve. *Ctr. for Biological Diversity*, 141 F.4th at 1001, citing 42 U.S.C. §§ 6504(a), 6506a(a), 6506a(b) (quotations omitted). In short, the provisions that Grandmothers Growing cite as requiring further action by BLM simply provide that Congress mandated expedited competitive leasing, and that exploration within special areas is to be conducted in a manner that assures maximum protection of certain values to the extent such protections are consistent with the Production Act. *Id.*

Rather than mandate "maximum protection" of resources over any leasing, exploration, or production activities, the Production Act "grants broad discretion to the Secretary to determine the specifics of how to protect surface resources in the NPR-A." *Ctr. for Biological Diversity*, 141 F.4th at 1003; 42 U.S.C. § 6506a(b). BLM's duty to maximally protect surface values during exploration activities in the Petroleum Reserve extends only within designated special areas, and "only to the extent consistent with the

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 14
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 18 of 36

requirements of [the] Act for the exploration of the reserve.'" *Id*. at 1002 (quoting 42 U.S.C. § 6504(a)). BLM can do this by, in the Secretary's discretion, "imposing 'conditions, restrictions, and prohibitions' seen as 'necessary or appropriate to mitigate reasonably foreseeable and significantly adverse effects on the surface resources' of the NPR-A." *Id.* (quoting 42 U.S.C. § 6506a(b)). Thus, as the Ninth Circuit has recognized, BLM can comply with the Production Act even where a different path would have "better protected" certain resources. *Id.*

Second, Grandmothers Growing ignores the record. To the extent BLM was even required—as Grandmothers Growing asserts—to maximally protect surface resources from exploration at the IAP stage, BLM did so in the 2025 IAP by identifying mitigation measures "to avoid or minimize potential harm consistent with the purpose and need of the action." *See* IAP, BLM_024547. These measures included leasing prohibitions and restrictions, designated migration corridors, lease stipulations, required operating procedures, and lease notices. *See, e.g.,* IAP at BLM_024547, BLM_024555-557 (specifically discussing mitigation to minimize impacts to subsistence uses); BLM_024570-608 (Appendix B – Lease Stipulations, Required Operating Procedures, and Lease Notices). These stipulations include no surface occupancy (NSO) for a subset of the Teshekpuk Lake Caribou Habitat Area and the often-cited Pik Dunes area, and timing limitations for the remainder. 2025 IAP, BLM_024581-84; Appendix C Maps at BLM_024614-024615 (providing greater detail of required stipulations depending on location and surface resources). Thus, the Secretary of the Interior complied with the Production Act in adopting the 2025 IAP ROD.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 15
Case 3:26-cv-00097-SLG   Document 100   Filed 07/14/26   Page 19 of 36

BLM also complied with its Production Act obligations in offering parcels for competitive lease sale by applying these mitigation measures to each of the offered leases. *See* BLM_130702 (providing that offered leases "are subject to stipulations and required operating procedures established by the 2025 NPR-A IAP ROD as well as analysis presented [in] the 2020 IAP Final Environmental Impact Statement and the 2025 final Environmental Assessment which incorporates new information that has arisen since the publication of the 2020 IAP/EIS.").

For example, North Slope Exploration was the high bidder on parcel H-408, a parcel just south of the Conservation ROW. In addition to standard lease stipulations, BLM imposed Lease Stipulation K-8. BLM_130718. BLM designed Stipulation K-8 to protect the Teshekpuk Caribou herd habitat area with, among other protections, a 1-mile NSO buffer south of the Teshekpuk Lake, and timing limitations precluding any surface activity outside of the buffer but within the general area during calving. BLM_130746-47; IAP ROD, BLM_024581. This stipulation also mandates that lessees compile multi-year data on caribou movement, unless the lessee can establish that sufficient studies already exist. *Id.*

North Slope Exploration was also the high bidder on parcel D-12, which is south and west from the Conservation ROW but still within the TLSA. As provided in the Sale Notice, BLM imposed Lease Stipulations K-1, K-2, K-8, K-12 to this lease. BLM_130731. Stipulation K-1 protects rivers within the Petroleum Reserve through NSO buffers for development activities, among other protections. BLM_130739-41; IAP ROD, BLM_024574-76. Stipulation K-2 offers similar protections for deep water lakes.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 16
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 20 of 36

BLM_130741-42; IAP ROD, BLM_024577-78. Stipulation K-12 addresses accessing mineral resources under Native allotments by implementing a 1-mile buffer for permanent oil and gas facilities from Native allotments. BLM_130749-50; IAP ROD, BLM_024584-85.

In addition to applying base and site-specific stipulations to each lease, the Sale Notice informed bidders that that prior to any exploration or development-related activities, a lessee must first obtain a permit, on which BLM will impose further restrictions and conditions of approval. BLM_130701. As explained, "BLM will add such site specific stipulations derived from the Environmental Assessment/Environmental Impact Statement and the associated field examination, as necessary, to ensure conservation of resource values." BLM_130703. BLM asserted that it intends to impose these additional requirements in addition to lease stipulations, and the 23-pages of required operating procedures that lessees must comply with to obtain a permit to explore for or develop resources within the Petroleum Reserve. BLM_130750-773 (as quoted from the 2025 IAP ROD at BLM_024585-608).

Thus, Grandmothers Growing's allegations that BLM failed to apply the Production Act are false. BLM applied appropriate mitigation measures, consistent with the Secretary's discretion. As shown through the 2025 IAP ROD and the Statement of Sale, BLM exercised its discretion to impose multiple tiers of protection for all surface resources within the TLSA, including lease stipulations, required operating procedures, and reservation of right to apply further conditions of approval for any geophysical operation permit.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 17
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 21 of 36

**B.     BLM reasonably interpreted congressional mandates in adopting the 2025 IAP ROD and conducting oil and gas leasing**

Grandmothers Growing also asserts that each of the challenged actions violated the APA because they all relied on BLM's statement in the cancellation decision that the Reconciliation Act "obligated" the agency to make certain tracts available for leasing. Doc. 84, pp. 17-20 of 32. Even if this argument were persuasive as to the Conservation ROW Cancellation Notice, it boils down to the logical fallacy of post hoc ergo propter hoc. Further, the argument is not supported by law.

Grandmothers Growing asserts that since the 2025 IAP ROD and Notice of Sale offered tracts within the Conservation ROW, and these decisions occurred after the ROW cancellation, they should also fail in their entirety, as BLM failed to revisit "the legal premise that triggered the cancellation." Doc. 84, p. 18 of 32. Grandmothers Growing fails to cite any language in either the 2025 IAP ROD or the Sale Notice (or Statement of Sale) that indicates that these decisions were "premised" on the belief that BLM had to offer the entirety of the lands within the 2020 IAP. Rather, they ask this Court to conclude that since these decisions came after the Cancellation Notice, they necessarily relied on that statement.

In any case, as explained by Defendants and reflected in the record, BLM never relied on an erroneous interpretation of the Reconciliation Act in cancelling the Conservation ROW, issuing the 2025 IAP ROD, or conducting the lease sale because BLM exercised its discretion to determine which parcels to offer for sale consistent with the 2025 IAP and BLM's congressional directives. Doc. 95, p. 40 of 90, citing BLM_130697.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 18
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 22 of 36

Further, even accepting Grandmothers Growing's assertion that BLM relied on a mistaken assumption in cancelling the Conservation ROW, the *Safe Air* and *Chenery* cases cited by Grandmothers Growing do not support their assertion that all subsequent decisions fall like dominoes. *See* Doc. 84, p. 17 of 32. *Safe Air* confirms that a court reviews an agency action on the basis articulated by the agency. *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1101 (9th Cir. 2007). Similarly, the Court here is required to individually evaluate each challenged decision on the record before it.

*Safe Air* vacated EPA's State Implementation Plan because EPA's flawed premise was fundamental to its determination. Here, BLM's one-sentence reference to the Reconciliation Act was neither BLM's sole basis for cancellation of the Conservation ROW, nor was it a "fundamental premise." *See* Cancellation Decision, ROW_02699-ROW_02707. Even Nuiqsut Trilateral, Inc. (Nuiqsut) in the related *Nuiqsut* case, concedes that BLM provided not one reason but "three reasons why it believed the [Conservation ROW] was unlawful when it was issued." *Nuiqsut Trilateral, Inc. v. Burgum, et al.*, Case No. 3:26-cv-98, Doc. 56, pp. 14-15 of 34. Thus, the *Safe Air* case is inapposite, and does not support vacatur of the Cancellation Notice, 2026 IAP ROD, or the Sale Notice.

## C. BLM's adoption of the IAP constituted a supported policy reversal

Finally, BLM's adoption of the 2025 IAP and issuance of the Sale Notice and Statement of Sale do not constitute unlawful policy reversals without adequate justification. As explained by Defendants, this case is distinguishable from *Kake* and *Fox* because BLM's 2025 IAP ROD and Sale Notice do not constitute policy reversals on the same administrative record. *See* Doc. 95, p. 57-60 of 90. Further, Defendants did provide

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 19
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 23 of 36

reasonable explanations for returning to 2020 IAP management direction. *Id.* Indeed, the 2025 IAP was based on updated information from 2025 as well as tens of thousands of pages of analysis underlying the 2020 IAP ROD, which the 2022 IAP ROD reversed based on the previous administration's Executive Order.

## III. REVOCATION OF THE CONSERVATION ROW WAS LAWFUL

Grandmothers Growing asserts that this Court should vacate BLM's Cancellation Decision. *See*, Doc. 84, pp. 20-23 of 32. NSE adopts Defendants' arguments supporting the lawfulness of BLM's revocation of the Conservation ROW as if fully stated here. Doc. 95, pp. 60-70 of 90.

## IV. IF THE COURT FINDS ERROR, REMAND WITHOUT VACATUR IS THE APPROPRIATE REMEDY

If the Court finds error in any challenged action, it can only award relief consistent with its jurisdiction under the APA, plaintiffs' standing to challenge the action, and proper application of the *Allied-Signal* test for weighing the seriousness of any error against the disruptive consequences of vacatur. As explained below, vacatur is not warranted for any alleged error.

### A. The Court must consider remedy in the context of its jurisdiction only to "set aside" the specific final agency action for which Grandmothers' Growing has asserted a legal violation.

Importantly, the APA permits this Court to "set aside" only final agency action. 5 U.S.C. § 704. Therefore, Grandmothers Growing must establish that each action it asks the Court to "declare unlawful" and "set aside" is, in fact, final agency action. *Id.* Further, any remedy must be limited to the specific agency action for which the court finds error.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 20

Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 24 of 36

Grandmothers Growing requests this Court "declare unlawful the Cancellation Notice, the 2025 Integrated Activity Plan Record of Decision, the Notice of Sale, and the Acceptance of Bids, as to the relevant tracts." Doc. 84, p. 30 of 32. Notably, its request for vacatur is broader than its request for declaratory relief, as it requests this Court vacate not only the 2025 IAP ROD, Sale Notice, and Acceptance of Bids as to the Relevant Tracts (as described by Plaintiffs); but also to vacate any leases issued on the Relevant Tracts. Grandmothers Growing asks for this Court to vacate the final agency action of lease issuance—without establishing each is final agency action, or requesting the Court find this action unlawful.

Whether or not Grandmothers Growing's lack of precision in requesting relief under the APA was intentional, this discrepancy is important for two reasons. First, as discussed above, standing is not dispensed in gross; a plaintiff is required to establish standing for each claim and "***for each form of relief sought***." *Wash. Envtl. Council*, 732 F.3d at 1139 (emphasis added). Thus, if Grandmothers Growing has not established standing to challenge each of the Cancellation Decision, the 2025 IAP ROD, the Sale Notice, the Acceptance of Bids, and the individual lease contracts it cannot seek vacatur of each. *Id.*

As discussed in Section I.B. above, Grandmothers Growing's member affidavits did not establish injury or causation to each of the leases they seek to challenge. Thus, they are not entitled to that remedy. *Id.* Similarly, if the Court finds any of the challenged actions not to be final agency actions, the Court does not have jurisdiction under 5 U.S.C. § 706 to "hold unlawful and set aside" non-final actions. 5 U.S.C. §§ 704, 706(2).

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 21
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 25 of 36

Second, precision is important, as the Supreme Court has confirmed that a court cannot blur the line between vacatur and injunctive relief. While vacatur is an available remedy for violations of the APA upon a finding under 5 U.S.C. § 706(2), entry of injunctive relief requires a plaintiff to meet the four-factor test. *See Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 141 (2010) (requiring plaintiffs to establish entitlement to injunctive relief by satisfying the four-factor test). The court in *Monsanto* also carefully distinguished between injunctive relief and vacatur, by distinguishing the district court's vacatur of the agency's decision to deregulate genetically engineered alfalfa, from the district court's injunction prohibiting the agency from deregulating genetically engineered alfalfa pending completion of the court-mandated EIS and reversing the entry of an injunction where the district court had not made the requisite findings for injunctive relief. *Id.* at 156.

The Court of Appeals for the District of Columbia also acknowledged this distinction in *Standing Rock Sioux*, by delineating the lower court's vacatur of an EIS authorizing an oil pipeline, from the court's entry of a preliminary injunction requiring the agency to shut in the pipeline. *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 985 F.3d 1032, 1054 (D.C. Cir. 2021). There, the project opponents argued that they were absolved from meeting the four-factor injunction test because entry of an injunction requiring the agency to shut in the pipeline and have it emptied of oil it was a "necessary consequence" of vacatur. *Id.* (noting that "[i]f a district court could, in every case, effectively enjoin agency action simply by recharacterizing its injunction as a necessary consequence of vacatur, that would circumvent the Supreme Court's instruction

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 22
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 26 of 36

in *Monsanto* that 'a court must determine that an injunction *should* issue under the traditional four-factor test.'").

Grandmothers' Growing does not request, has not asserted standing for, and has not provided legal or factual support for finding BLM's subsequent execution of the leases after Bid Acceptance as unlawful. Nor has it provided any legal or factual support for meeting the four-factor *Monsanto* test for an injunction requiring BLM to cancel its lease contracts. Therefore, Plaintiffs cannot seek its requested relief of vacatur of the individual leases.[2]

### B. If the Court identifies error, remand is the appropriate remedy because the disruptive consequences outweigh the seriousness of the alleged errors.

As discussed above, BLM acted lawfully in cancelling the Conservation ROW, adopting the 2025 IAP ROD, and conducting the lease sale. This Court has the equitable discretion under the APA to tailor a remedy appropriate to this case. 5 U.S.C. § 702. However, even if the Court identifies error, this Court's authority to award equitable relief and the *Allied-Signal* factors favor remand without vacatur to allow the agency to address any deficiency while avoiding the severe and unnecessary disruption vacatur of the 2025 IAP ROD, Sale Notice, or Acceptance of Bids would impose on settled leasehold and

---

[2] Defendants also note the imprecision of Plaintiffs' use of the term "lease sale" and raise the question of what the challenged final agency action here is. *See* Doc. 95, p. 41 of 90 n.8. Therefore, if the Court finds an error, the Court may benefit from additional remedy briefing to further clarify (1) the final agency actions for which Grandmothers Growing has proven error; (2) whether that error was prejudicial (5 U.S.C. § 706); (3) whether the seriousness of that error outweighs the harms that would result from setting aside that final agency action on a complete record.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 23
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 27 of 36

investment interests, and other private real property interests.

The *Allied-Signal* test "requires the court to consider the disruptive effect of vacatur." *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 51 (9th Cir. 2025). The test also requires this Court to consider "the seriousness of the error." *Id.* Here, the balance weighs in favor of remand as the disruptive effects significantly outweigh the seriousness of the agency error as to each challenged action.

Remand without vacatur is particularly appropriate where, as here, "'there is at least a serious possibility that the [agency] will be able to substantiate its decision on remand.'" *Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 20 (D.D.C. 2014) (citing *Allied-Signal v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993)).

### 1. The disruptive consequences are severe as vacatur would destroy real property interests and strand investment.

Vacatur of the decision to revoke the Conservation ROW, the 2025 IAP ROD, and the decision to offer parcels for lease is not required. Here, the disruptive consequences outweigh any alleged error given the private property interests, sunk capital investments, and the severe disruptive consequences that would result from cancelling the leases.

Vacating the 2025 IAP ROD would risk further harm by reinstating outdated plans. Fed. Defs. Br., Doc. 95, p. 88 of 90. Further, Grandmothers Growing's requested relief of lease vacatur would extinguish valid existing contract and property rights with significant value to the lessees. *Conner v. Burford*, 848 F.2d 1441, 1461 (9th Cir. 1988) (noting significant value in exclusive right to engage in oil and gas activities granted by a federal

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 24
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 28 of 36

oil and gas lease). Federal oil and gas leases are contracts, *Mobil Oil Expl. & Producing Se. v. United States*, 530 U.S. 604, 607-08 (2000), and real property. *Union Oil Co. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975).

In addition to destruction of real property rights, the financial harm to lease purchasers and the State of Alaska is substantial. The financial investments made by companies prior to, during, and after the lease sale are significant, in the hundreds of millions of dollars. Lessees spent over 160 million in the 2026 lease sale. BLM_130792. North Slope Exploration was the high bidder on 78 leases from the March sale. BLM_130798. North Slope Exploration alone invested $22,593,800 on the 72 leases it won and was issued. Ex. A, Lowe Decl. ¶ 4; BLM130793-130797. Considering only the face value of these leases, the economic harm in this case is greater than the economic harm the Ninth Circuit found counseled against vacatur in the *Western Watersheds* portion of the *Montana Wildlife* case cited by Grandmothers Growing. *Mont. Wildlife Fed'n*, 127 F.4th at 52 (reversing district court's vacatur where lease face value totaled over $125 million). As the Ninth Circuit found, to discount this harm would be to "undersell[] the potential employment and economic impacts of unwinding" multiple lease sales involving over a thousand leases. *Id.*

Lease cancellation would inflict substantial, non-compensable harm that cannot be measured—or cured—by returning bonus bids and rentals to the lease purchasers. In addition to capital expenditure, North Slope Exploration invested substantially in time and resources to identify and acquire its leases. Ex. A, Lowe Decl. ¶ 4 (noting total investment in bonus, first-year rentals, and lease processing fees for 72 leases purchased in the 2026

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 25
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 29 of 36

sale of $22,593,800). That investment represents proprietary work product that has now been exposed to the public through the bidding process, as the public auction has occurred, and BLM has published the bid amounts of each bidder, along with the amount each participating bidder was willing to pay for each parcel. BLM_130793-130797. If the Court vacates the sale and enjoins issuance of the leases for which North Slope Exploration was the high bidder, any future bidder will have North Slope Exploration's proprietary information, as well as the proprietary information of any bidder information related to each interested party, and the amount of their last bid, thus prejudicing the parties in any future lease sale involving these parcels.

In addition, North Slope Exploration invested significant fiscal and personnel resources in evaluating whether to purchase the leases, including a substantial investment in evaluating resources on its new and existing leases through seismic licensing, data reprocessing, archaeological and environmental field studying, and gravel sourcing. Ex. A, Lowe Decl. ¶ 3. None of these costs will be recouped by North Slope Exploration if the court cancels issued leases, constituting harm to North Slope Exploration.

This means that a simple remand and refund (or injunction ordering BLM not to accept bids) will not restore the status quo ante. The Ninth Circuit recognizes that the "quintessential disruptive consequence arises when an agency cannot easily unravel a past transaction in order to impose a new outcome." *Ctr. for Food Safety*, 56 F.4th at 671 (quotations and citation omitted). With lease bids disclosed, "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante"; to attempt to do so "seems an

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 26

invitation to chaos." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002).

### 2. If BLM committed an error, the "seriousness" of that error does not counsel vacatur.

As explained in Defendants' brief, Grandmothers Growing failed to identify an error in BLM's actions, much less a "serious error" warranting vacatur. Doc. 80, pp. 27-86 of 90. Although it is arguably premature to address the seriousness of any error that the Court might find, the alleged "serious" errors identified by Grandmothers Growing (even if proven) do not mandate vacatur of either the IAP ROD, or the decision to offer parcels for lease. In fact, courts regularly decline to vacate even in the face of a "serious" error. *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 664 (9th Cir. 2022).

First, even if BLM erroneously interpreted the Reconciliation Act, its reliance on that interpretation to lawfully offer parcels consistent with the Production Act, the Reconciliation Act, and the governing IAP does not constitute a "serious" error warranting vacatur. *Ctr. For Food Safety*, 56 F.4th at 664 (holding that errors are not serious when agency is likely to justify its decision with better reasoning on remand). Second, as explained by Defendants, BLM addressed resource protection in the IAP and at the leasing stage through the Statement of Sale. Doc. 95, p. 37-40 of 90. Any additional deficiencies found by the Court can readily be addressed on remand.

## V. THE COURT SHOULD SET LIMITS TO AVOID OPEN-ENDED REMAND AND A *DE FACTO* PERMANENT INJUNCTION

If this Court orders remand of any action, NSE requests that this Court set a reasonable time for Defendants to complete remand and to issue a new decision. This will

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 27

Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 31 of 36

balance the interests of the lease holders—who bear no fault for any alleged deficiencies—with the need for additional public involvement and analysis. Courts often impose time limits on remand as an attempt to balance the harms to project proponents resulting from further delay. *See Alaska v. Lubchenco*, No. 3:10-cv-00271-TMB, 2012 U.S. Dist. LEXIS 202329, at *12 (D. Alaska Mar. 5, 2012) (imposing timeline for agency to complete EIS and implement a rulemaking); *Ctr. for Biological Diversity v. United States BLM*, No. C 06-4884 SI, 2011 LX 33733, at *33 (N.D. Cal. Jan. 28, 2011) (remanding ROD imposing timeline for completion of revised agency decision by date certain); *Wilderness Soc'y v. DOI*, No. 22-cv-1871 (CRC), 2024 U.S. Dist. LEXIS 124730, *54 (D.D.C. July 16, 2024) (imposing 180-day deadline for BLM to complete a supplemental NEPA analysis and issue a new decision record in case challenging BLM's decision to offer parcels for lease under the Mineral Leasing Act).

Reasonable time limits allow the court to balance the interests of lease holders—for whom continued uncertainty and delays constitute actual harm—with Defendants interests in performing thorough supplemental analysis, and the public's interest in prompt decisionmaking. Without a reasonable time limit, remand can function as an indefinite injunction and adverse parties can further burden federal agencies with duplicative comments and successive litigation. For example, federal leaseholders waited nearly five years for BLM to issue a supplemental analysis for oil and gas leases issued in three BLM Wyoming 2017 lease sales after a court enjoined development and ordered a remand of BLM's analysis and leasing decision. *See W. Watersheds Project v. Bernhardt*, 543 F. Supp. 3d 958, 996 (D. Idaho 2021). BLM issued the challenged leases in 2017. *Id.* In a

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 28
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 32 of 36

lawsuit brought in 2018, the court enjoined development on the leases in June of 2021. *Id.*

BLM did not issue a final decision and supplemental analysis on these leases until June 5,

2026, nine years into the ten-year lease term. *See* BLM eplanning page,

*https://eplanning.blm.gov/Project-Home/?id=4a39daf8-a7f2-f011-8407-001dd80db62a*.

The court injunction and further agency process mired these leases in uncertainty for nine

years of their ten-year term.

Extensive delays and uncertain development timelines are an undue burden on

lessees, who invested real capital in these real property interests, and bear no fault for any

of the alleged deficiencies. Therefore, should the Court remand a decision to BLM for

further analysis, NSE proposes the Court order a maximum of 180-day timeline for

completion of such required supplemental or revised decision. *See Wilderness Soc'y*, 2024

U.S. Dist. LEXIS 124730, at \*54 (imposing 180-day deadline for supplemental analysis

and decision record in case challenging BLM's decision to offer parcels for lease under the

Mineral Leasing Act).

## CONCLUSION

Grandmothers Growing has failed to establish that this Court can vacate each

challenged action as a final agency action. Further, it has not shown standing as to each

action they seek to set aside. Finally, BLM's actions in cancelling the Conservation ROW,

updating and issuing the 2025 IAP, and offering parcels for lease in the Petroleum Reserve

are consistent and compliant with the Production Act and Congressional intent.

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 29
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 33 of 36

Thus, Grandmothers Growing is not entitled to any of its requested relief. In the event that the Court finds error, a targeted, limited, and efficient remand tailored to the specific error on the relevant action is the proper remedy.

Dated this 13th day of July 2026.

Respectfully submitted,

*/s/ Malinda Morain*
Theresa Sauer (*pro hac vice*)
Malinda Morain (*pro hac vice*)
BEATTY & WOZNIAK, P.C.
1801 California St., Suite 3650
Denver, Colorado 80202
Telephone: (303) 407-4499
Facsimile: (800) 886-6566
tsauer@bwenergylaw.com
mmorain@bwenergylaw.com

*Attorneys for Defendant-Intervenors*
*North Slope Exploration, LLC and North*
*Slope Energy, LLC*

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 30
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 34 of 36

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) as modified by applicable orders issued by or requested from the Court because this memorandum contains 8,712 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

/s/ Malinda Morain
Malinda Morain (*pro hac vice)*

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 31
Case 3:26-cv-00097-SLG     Document 100     Filed 07/14/26     Page 35 of 36

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July 2026, I served a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court for the District of Alaska via the CM/ECF system, which will serve this document on all attorneys of record.

/s/ Malinda Morain

North Slope Exploration, LLC and North Slope Energy, LLC's Memo. in Opposition to
Pls.' Opening Br. for Summ. J.
*Grandmothers Growing Goodness, et al. v. Burgum, et al.*, Case No. 3:26-cv-00097-SLG – Page 32
Case 3:26-cv-00097-SLG    Document 100    Filed 07/14/26    Page 36 of 36