KATHLEEN C. SCHRODER (Admitted *Pro Hac Vice*)
katie.schroder@davisgraham.com
MARK E. CHAMPOUX (Admitted *Pro Hac Vice*)
mark.champoux@davisgraham.com
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, Colorado  80205
Telephone:  303.892.9400

*Attorneys for Epoch Oil and Gas, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.,*<br><br>    *Plaintiffs*,<br><br>v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*,<br><br>    *Defendants,*<br><br>and<br><br>STATE OF ALASKA *et al.*,<br><br>    *Intervenor-Defendants.* | Case No. 3:20-cv-00206-SLG |
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC *et al.,*<br><br>    *Plaintiffs*,<br><br>v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*,<br><br>    *Defendants,*<br><br>and | Case No. 3:26-cv-00078-SLG |

*Center for Biological Diversity, et al. v. Burgum, et al.*
Case No. 3:20-cv-206; 3:26-cv-78; -97-SLG

| | |
|---|---|
| CONOCOPHILLIPS ALASKA, INC. *et al.*,<br><br><div align="center">*Intervenor-Defendants.*</div> | |
| GRANDMOTHERS GROWING GOODNESS *et al.,*<br><br><div align="center">*Plaintiffs*,</div><br>v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*,<br><br><div align="center">*Defendants,*</div><br>and<br><br>CONOCOPHILLIPS ALASKA, INC. *et al.*,<br><br><div align="center">*Intervenor-Defendants.*</div> | Case No. 3:26-cv-00097-SLG |

<div align="center">

**EPOCH OIL AND GAS, LLC's MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTIONS FOR SUMMARY JUDGMENT**

</div>

# TABLE OF CONTENTS

<div align="right">**Page**</div>

INTRODUCTION .................................................................................................................. 1

ARGUMENT........................................................................................................................ 2

I.      The Alleged Leasing Errors Do Not Warrant Vacatur............................................ 2

II.     The Disruptive Consequences to Epoch Weigh Strongly Against Vacatur............ 5

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. U.S. Forest Serv.*,
907 F.3d 1105 (9th Cir. 2018) ................................................................. 2

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ................................................... 2, 3, 5, 6, 8

*Cal. Cmtys. Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) ................................................................. 2, 6

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
141 F.4th 976 (9th Cir. 2025) ................................................................. 6

*Gulf Restoration Network v. Haaland*,
47 F.4th 795 (D.C. Cir. 2022) ................................................................. 7

*Healthy Gulf v. Burgum*,
No. 23-cv-604 (APM), 2026 U.S. Dist. LEXIS 112996
(D.D.C. May 21, 2026) ................................................................. 8

*Mont. Wildlife Fed'n v. Haaland*,
127 F.4th 1 (9th Cir. 2025) ................................................................. 3, 5

*Orutsararmuit Native Council v. U.S. Army Corps of Eng'rs*,
No. 3:23-cv-00071-SLG, 2025 U.S. Dist. LEXIS 110107 (D. Alaska
June 10, 2025) ................................................................. 3

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 183 (2024) ................................................................. 8

**Statutes**

5 U.S.C. §§ 801–808 ................................................................. 4

5 U.S.C. § 801(b)(2) ................................................................. 5

5 U.S.C. § 801(f) ................................................................. 5

30 U.S.C. § 226(b) ................................................................. 6

42 U.S.C. § 6506a(f) ................................................................. 6

43 U.S.C. § 1337(a)(1) ...................................................................................................6

42 U.S.C. §§ 4321-4370h ..............................................................................................4

Pub. L. No. 119-21, § 50105(a), (b), 139 Stat. 72, 143–44 (2025) ...............................3, 4

Pub. L. No. 119-47, 139 Stat. 696 (Dec. 5, 2025)..........................................................4

**Regulations**

43 C.F.R. § 3120.51........................................................................................................6

Case 3:26-cv-00097-SLG    Document 101    Filed 07/14/26    Page 5 of 15

# INTRODUCTION

Intervenor-Defendant Epoch Oil and Gas, LLC ("Epoch") respectfully submits this consolidated response to Plaintiffs' opening briefs in the above-captioned matters.

Epoch was the highest bidder on eight leases in the National Petroleum Reserve in Alaska (NPR-A), including one in the Teshekpuk Lake Right-of-Way ("Right-of-Way") offered at the Bureau of Land Management's (BLM) March 18, 2026 NPR-A lease sale ("the Lease Sale").[1] Epoch joins, adopts, and incorporates as its own the Response in Opposition to Plaintiffs' Motion for Summary Judgment filed by Federal Defendants[2], except for section V of that response.[3] For the reasons set forth therein, this Court should deny Plaintiffs' motions for summary judgment.

Furthermore, Epoch agrees with the Federal Defendants and ConocoPhillips Alaska, Inc. ("ConocoPhillips")[4] that the breadth and nature of Plaintiffs' claims make it difficult to squarely address vacatur without a ruling on specific errors and that, therefore, the Court

---

[1] BLM has issued seven leases to Epoch ("Epoch Leases") but has not issued a lease to Epoch covering the tract in the Right-of-Way for which Epoch was the high bidder ("ROW Tract"). *See,* Defs.' Resp. at 24 (stating that BLM "issued letters accepting high bids on certain leases" but has not accepted bids or issued leases within the Right-of-Way).

[2] Federal Defendants filed identical responses ("Defs.' Resp.") in each of the above-captioned cases. The responses are docketed at Dkt. 182, Dkt. 46, and Dkt. 95 in Case Nos. 3:20-cv-206, 3:26-cv-78, and 3:26-cv-97, respectively.

[3] Epoch currently takes no position on the validity of the Right-of-Way or the Department of the Interior's December 19, 2025 letter canceling the Right-of-Way, but reserves the right to later adopt positions and legal arguments advanced by any party to this litigation with respect to that issue.

[4] ConocoPhillips filed identical responses ("ConocoPhillips' Resp.") in each of the above-captioned cases. The responses are docketed at Dkt. 186, Dkt. 50, and Dkt. 99 in Case Nos. 3:20-cv-206, 3:26-cv-78, and 3:26-cv-97, respectively.

should order additional remedy briefing if the Court finds error in BLM's decisions. *See* Defs.' Resp. at 86; ConocoPhillips' Resp. at 75 ("[T]he parties can best address the *Allied-Signal* factors . . . after the Court has identified a specific legal error (if any)."). In the meantime, however, Epoch writes separately to demonstrate why, regardless of the type of any error, economic and congressional direction considerations preclude vacatur of individual leasing decisions. Thus, even if this Court rules in Plaintiffs' favor on any of their claims, the Court should not vacate Epoch's Leases, BLM's decisions to accept the high bids for Epoch's Leases, or the Lease Sale as it relates to Epoch's Leases and the ROW Tract.

<div align="center">

**ARGUMENT**

</div>

Principles of equity govern whether to remand with or without vacatur. *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018). Courts weigh (1) "the seriousness of the agency's errors" against (2) "the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Both factors compel the Court—even if it finds any error in the agency decisions—not to vacate Epoch's Leases, BLM's decisions to accept the high bids for Epoch's Leases, or the Lease Sale as it relates to Epoch's Leases and the ROW Tract.

## I. The Alleged Leasing Errors Do Not Warrant Vacatur.

Courts do not consider a deficiency "serious" to warrant vacatur when "there is at least a serious possibility that the [agency] will be able to substantiate its decision on

remand." *Allied-Signal*, 988 F.2d at 151; *accord, e.g.*, *Orutsararmuit Native Council v. U.S. Army Corps of Eng'rs*, No. 3:23-cv-00071-SLG, 2025 U.S. Dist. LEXIS 110107, at *6–7 (D. Alaska June 10, 2025) (stating that vacatur is unwarranted "when the agency would likely be able to offer better reasoning such that it could adopt the same rule or decision on remand") (quoting *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 51 (9th Cir. 2025)) (cleaned up). Here, it is much more than a "serious possibility" that BLM will be able to substantiate Epoch's leases on remand because congressional direction forecloses any substantially different outcome.

First, with respect to BLM's decision to offer certain lands for lease, regardless of whether Plaintiffs succeed in demonstrating any alleged error,[5] BLM is likely to substantiate its decision to offer the Epoch Leases and the ROW Tract for lease on remand because Congress has directed that BLM offer these lands for lease. In Public Law 119-21, colloquially known as the "One Big Beautiful Bill Act" (OBBBA), Congress directed the Secretary of the Interior to "expeditiously restore and resume oil and gas lease sales . . . *in the areas designated for oil and gas leasing as described in the [2020] NPR–A final environmental impact statement and the [2020] NPR-A record of decision*." Pub. L. No. 119-21, § 50105(a), (b), 139 Stat. 72, 143–44 (2025) (emphasis added). Given that the 2020

---

[5] *See* Pls.' Opening Br., Dkt. 171, at 55–56, *Ctr. for Biological Diversity v. Burgum*, No. 3:20-cv-00206-SLG (D. Alaska  May 27, 2026) ("CBD Br."); Pls.' Opening Br. for Summ. J., Dkt. 84, at 24–25, *Grandmothers Growing Goodness v. Burgum*, No. 3:26-cv-00097-SLG (D. Alaska May 27, 2026) ("GGG Br."); Pl.' Opening Br. for Summ. J., Dkt. 26 at 51, *Sovereign Iñupiat for a Living Arctic v. Burgum*, No. 3:26-cv-00078-SLG (D. Alaska May 27, 2026) ("SILA Br."). All page number references are to ECF page numbers.

IAP ROD designates Epoch's Leases and the ROW Tract as open for leasing, Congress directed that BLM lease them.[6]

Furthermore, in the OBBBA, Congress contemplated that, within the next decade, BLM could offer for lease all unleased lands open to leasing under the 2020 IAP ROD. Specifically, Congress required BLM to conduct at least five lease sales in the next ten years in the NPR-A, each offering at least four million acres. Given that the 2025 IAP ROD makes approximately 18.6 million acres open for leasing, *see* BLM_24539, Congress' direction that BLM offer 20 million acres for lease necessarily recognized that BLM may offer all unleased lands open to leasing under the 2020 IAP ROD, including Epoch's Leases and the ROW Tract. *See id.* § 50105(c), 139 Stat. at 144. In light of these directions, there is much more than a serious possibility that BLM would affirm its leasing decisions on remand—in fact, doing so is very likely given statutory direction from Congress to do so. Congress's disapproval of the 2022 IAP ROD under the Congressional Review Act (CRA) reinforces these conclusions. On December 5, 2025, the President signed a joint resolution disapproving the April 2022 NPR-A IAP under the CRA. *See* Pub. L. No. 119-47, 139 Stat. 696 (Dec. 5, 2025); 5 U.S.C. §§ 801–808. As a result, the 2022 IAP "shall be treated as

---

[6] Epoch acknowledges that the Court determined, at the preliminary injunction stage, that OBBBA's directive to "expeditiously restore and resume oil and gas lease sales" in certain areas does not compel the conclusion that the ROW's issuance was invalid. *See* Order, Dkt. 42, at 20, Nuiqsut Trilateral, Inc. v. Burgum, No. 3:26-cv-00098-SLG (D. Alaska March 16, 2026). But whether OBBBA requires cancellation of the ROW is a very different question than whether OBBBA's direction to BLM regarding lease sales makes it likely that BLM will substantiate its decisions on remand. OBBBA's directions to BLM regarding lease sales are mandatory and specific, and, for the reasons stated above, make it very likely that BLM will affirm its leasing decisions on remand, even if the Court finds any errors under NEPA, APA, or otherwise.

though [it] had never taken effect," 5 U.S.C. § 801(f), and a new IAP "substantially the same as [the 2022 IAP] may not be issued," *id.* § 801(b)(2). Because the 2022 IAP ROD simply reverted management to the 2013 IAP ROD, BLM cannot adopt either the 2022 or 2013 IAP ROD on remand, including their special area boundaries. Moreover, BLM cannot lease in accordance with the 2022 or 2013 IAP ROD, contrary to Plaintiffs' assertions. *See, e.g.*, CBD Br. at 56 ("BLM's numerous substantive errors resulted in BLM receiving bids on leases that are almost exclusively within 2013-designated special areas, with the vast majority in areas previously closed to leasing"). Congress therefore has left BLM with no meaningful alternative but to affirm its leasing decisions on remand.

Second, to the extent Plaintiffs argue that vacatur is necessary to allow BLM to impose different stipulations or protective measures on Epoch's Leases or a lease for the ROW Tract, *see, e.g.*, GGG Br. at 25–26, Congress has removed BLM's discretion to do so. The OBBBA mandates that BLM "shall offer the same lease form, lease terms, economic conditions and stipulations as described" in the 2020 IAP ROD. *Id.* § 50105(b), 139 Stat. 144. BLM therefore cannot adopt lease stipulations or terms different from those in the 2025 IAP ROD and the 2020 IAP framework, which the 2025 IAP adopted. *See* Defs.' Resp. at 20 n.2.

For these reasons, BLM is likely to substantiate its leasing decisions on remand. The first *Allied-Signal* factor therefore weighs decidedly against vacatur.

## II. The Disruptive Consequences to Epoch Weigh Strongly Against Vacatur.

When weighing the disruptive consequences of vacatur under *Allied-Signal*'s second factor, the Ninth Circuit considers economic disruption. *Mont. Wildlife Fed'n*, 127

F.4th at 51 ("economic disruption weighs against vacatur under certain circumstances"); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 141 F.4th 976, 1015 (9th Cir. 2025) (declining to vacate when economic disruption would be "severe"); *Cal. Cmtys.*, 688 F.3d at 993–94 (remanding without vacatur because the "delay and trouble vacatur would cause are severe" and "economically disastrous"); *accord Allied-Signal*, 988 F.2d at 150–51. Here, vacatur of Epoch's Leases, BLM's decisions to accept the high bids for Epoch's Leases, or the Lease Sale as it relates to Epoch's Leases and the ROW Tract would yield two significant disruptive consequences.

First, vacatur would cause a distinct and irreparable competitive harm unique to the sealed-bid leasing process for NPR-A leases. Leasing in the NPR-A must follow the same procedures as the Outer Continental Shelf Lands Act leasing program, which requires sealed bidding. *See* 42 U.S.C. § 6506a(f); 43 U.S.C. § 1337(a)(1). Under a sealed-bid process, prospective lessees submit sealed bids representing their best-and-final offer for each tract. *See* 43 U.S.C. § 1337(a)(1). Thus, bidders must commit their maximum price upfront without knowing competing bids.[7] Epoch's bids alone totaled more than $16 million, including the single largest bid of the sale exceeding $3.5 million. *See* Ex. A, NPR-A Lease Sale Bid Recap at 1; Ex. B, Decl. of J. Piccone ¶ 4.

Vacatur would cause competitive harm because Epoch cannot "unring the bell" of its disclosed bids. A sealed bid represents a company's thorough and confidential evaluation of lease tracts, internal finances, and market conditions. If a company is forced

---

[7] By contrast, leasing under the Mineral Leasing Act bidding occurs through live competitive auctions. *See* 30 U.S.C. § 226(b); 43 C.F.R. § 3120.51.

*Center for Biological Diversity, et al. v. Burgum, et al.*
Case No. 3:20-cv-206; 3:26-cv-78; -97-SLG
Case 3:26-cv-00097-SLG   Document 101   Filed 07/14/26   Page 11 of 15   6

to rebid on the same tract after vacatur of their lease, competitors will know the amount that company was willing to pay for the lease. Competitors could exploit that information to outbid the original high bidder by a marginal amount, effectively leveraging the vacatur to gain a competitive advantage. This harm is especially acute for smaller operators like Epoch, which may not have the same resources as large, publicly held companies. And this harm is not speculative—for one of the tracts, Epoch outbid the next highest bidder by over $3 million. *See* Ex. A, NPR-A Lease Sale Bid Recap at 2. For these reasons, one court has recognized that vacatur of oil and gas leases acquired through sealing bidding would be disruptive because "any redo of the lease sales would be tainted by prior publication of the lessees' proprietary valuation of the leases[.]" *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 805 (D.C. Cir. 2022) (internal alternations omitted). Thus, vacatur would irreparably compromise Epoch's bidding strategy and could expose it to predatory competition in any subsequent sale.

Second, vacatur of Epoch's Leases and the Lease Sale as to Epoch's Leases would be disruptive given that Epoch has made investments in reliance on its leases. Modern oil and gas operations require extensive planning, stakeholder engagement, and regulatory coordination long before any equipment reaches the ground. Ex. B, Decl. of J. Piccone ¶ 5. In addition to the $15 million Epoch spent on bids and first year's rentals for the Epoch Leases, Epoch has already spent approximately $500,000 on consultants, legal services, and other preparations since submitting its high bids in March 2026. *Id.* ¶ 6; *see* Ex. A, NPR-A Lease Sale Bid Recap. These preparatory investments would be lost if the leases were vacated.

Plaintiffs fail to blunt the effect of these harms. The *Grandmothers Growing Goodness* plaintiffs suggest that because no exploration has occurred, vacatur would cause minimal disruption. GGG Br. at 27. This argument misses the point. Vacatur is disruptive because of the economic harms to Epoch, and the fact that exploration has not occurred does not diminish these economic harms. The *Sovereign Iñupiat for a Living Arctic* plaintiffs argue that lessees such as Epoch assumed the risk of vacatur by participating in a lease sale during pending litigation. *See* SILA Br. at 52 n.220. But litigation risk does not diminish the economic impacts of vacatur. *See Healthy Gulf v. Burgum*, No. 23-cv-604 (APM), 2026 U.S. Dist. LEXIS 112996, at *17 (D.D.C. May 21, 2026) (citing *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 183, 183–84 (2024)) ("To be sure, [assumed risk] contextualizes the court's analysis of the economic impacts of vacatur. But it does not render them irrelevant, particularly in light of the Supreme Court's recent directive to consider the impact of delays and costs that vacatur may impose on both the agency and developers."). Finally, the *Center for Biological Diversity* plaintiffs simply reiterate their arguments regarding the first *Allied-Signal* factor and do not dispute the economic consequences of vacating the lease sale and associated leases. CBD Br. at 56–57.

For these reasons, the second *Allied-Signal* factor counsels strongly against vacatur. This disruption is especially acute given that BLM lacks discretion to adopt a different decision on remand. Taken together, both *Allied-Signal* factors weigh against vacatur, and this Court should decline to set aside the leases.

**CONCLUSION**

For these reasons, Epoch respectfully requests that the Court deny Plaintiffs' motions for summary judgment on all claims. In the alternative, if the Court finds any deficiency in BLM's analysis, Epoch respectfully requests that the Court remand BLM's leasing decisions without vacatur.

Dated: July 14, 2026.

DAVIS GRAHAM & STUBBS LLP

*/s/ Kathleen C. Schroder*

Kathleen C. Schroder
Mark E. Champoux
3400 Walnut Street, Suite 700
Denver, Colorado 80205
Phone: 303.892.9400
Fax: 303.893.1379
Email:  katie.schroder@davisgraham.com
        mark.champoux@davisgraham.com

*Attorneys for Epoch Oil and Gas, LLC*

<div align="center">**CERTIFICATE OF COMPLIANCE**</div>

Counsel for Epoch certifies that this brief is 2,450 words, in accordance with Local Rule 7.4(a).

<div align="right">*/s/ Kathleen C. Schroder*
Kathleen C. Schroder</div>

<div align="center">**CERTIFICATE OF SERVICE**</div>

I hereby certify that on this 14th day of July 2026, I served a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court for the District of Alaska via the CM/ECF system, which will serve this document on all attorneys of record.

<div align="right">*/s/ Beatriz Esparza*
Beatriz Esparza</div>